Good morning. My name is Stephen Manning, and I represent the petitioners, the Castellanos-Garcia family, who are present in the courtroom today. I wish to reserve three minutes for rebuttal, and I will keep track of my own time. This is an immigration asylum case. Mr. Castellanos and his family apply from Guatemala. They apply for political asylum for the then-Immigration and Naturalization Service. Before the immigration judge, and on an administrative appeal to the Board of Immigration Appeals, the agency denied the application. This case comes to the court with a very interesting posture. Both the respondent and the petitioners agree that the credibility determination, the negative credibility determination made by the agency is improper. According from the respondent's motion to remand, neither the immigration judge's decision nor the board's summary affirmance provide specific, cogent reasons as to why the petitioner was not a credible witness. Both parties agree that a remand in this matter is the appropriate remedy. What we dispute, however, and what petitioners ask this court to resolve, is both the scope and the purpose of that remand. Arguing against the backdrop of the Supreme Court's opinion in Ventura, there are four decisions that have been issued since Ventura by this court, which stand for three rules, which control the outcome of this case. Those four decisions that provided the citations to the court are Lin Chen v. Ashcroft, Lee v. Ashcroft, which is an on-bank opinion, Wang v. Ashcroft, and Hay v. Ashcroft. Those four cases provide for three rules. They stand for three rules. The first rule is that the proper remedy, when the agency's credibility finding is improper, is to disregard that credibility finding and assume the testimony is true. The second rule from those cases is that a remand on the merits of the asylum claim is the normal remedy. The first rule, is that in Hay? That would be in Hay, yes. And I'm extrapolating from the four cases to consolidate these. So the second rule, that the remand on the merits of an asylum claim is the normal remedy, when this court has reversed the negative credibility finding, unless one of two exceptions apply. We've consolidated those two exceptions into the third rule. A remand first is not appropriate for additional investigation when there's automatic statutory rule, such as the coercive family planning cases. Or, applicable here, remand is not appropriate to the agency when the agency has already considered both the factual and legal contentions regarding the asylum eligibility determination. Did the IJ consider change of country conditions? Yes and no. And I apologize for the duality of the answer. The issue was squarely before the immigration judge. He talked about the question of country conditions. He found, in total, that he ruled that the foundation of the claim, according to the immigration judge, I'm satisfied would be sufficient were it a plausible, credible claim upon which a grant of asylum could be made. We don't know what that really means. We don't know if he means you've established persecution on a protected ground, or if it means that, plus I've considered country conditions. He makes no specific reference to the country conditions. His discussion seems to be limited to the story is told. I respectfully would disagree. In order for him to reach that asylum determination that he would grant it but for his erroneous credibility determination, he would have had to consider the elements of the asylum claim, so the various legal elements on account of. He would need to consider any possible ineligibilities that may arise. He would need to consider a changed country condition. Because even if someone had demonstrated past persecution or had a well-founded, even if someone had demonstrated a past persecution, the country conditions element is always present. Did he in any way analyze the particular circumstances of Mr. Castellanos-Garcia in relation to changed country conditions? We have cases that say it has to be a particularized analysis. I didn't see anywhere where he went through that. I think your answer is no to that question. You don't have to think a lot about that. He didn't really, as Jed Silverman has been suggesting kindly or politely, really deal with the country conditions issue. The question I have about that is you go to a hearing and the government puts on, well, the petitioner puts on his evidence, the government puts on its evidence. Sometimes the hearing officer may not get to country conditions because he decides it on a question where he doesn't have to reach it. And then we say, well, he was wrong on that. Now let's remand and you get to country conditions. The question here is, did the government introduce anything that would suggest that there was a country conditions issue or that there was anything to rebut a finding of persecution? And what do you do if the government doesn't raise that issue below? It can't be because it's going to be decided in their favor on some preliminary issue. But is there anything in the record introduced by the government on the subject of country conditions? Yes. By the government introduced. What did the government introduce? I believe they introduced the State Department Country Profile Report. I thought the petitioner did. I believe it was the government that submitted that evidence. So the government didn't submit evidence and then the IJ didn't reach it. And we would agree at the time of the hearing on appeal to the Board of Immigration Appeals that the government never raised the issue of country conditions. In fact, my reading of the record is the government never even filed a brief in response to the petitioner's brief to the Board of Immigration Appeals. Well, they didn't have to reach it on appeal because it prevailed on the issue that was a perceivable or antecedent issue. Only if they were so assured of the fact that they would win on their negative credibility findings. The immigration judge reached. In order for him to say that this is a claim on which I would face asylum, he reached those issues. This case, I. So you're relying entirely on that one statement, which is somewhat ambiguous. In context, the statement, however, is not as ambiguous as it may appear that it was in the context of having gone through all the various testimonial evidence. It was in context of his legal determination regarding the elements of asylum. And then he stated that this case comes down to one of credibility. And then he proceeded to engage in an erroneous credibility determination. I think it's it's correct that he does. And after he talks about all of the questions of whether this would constitute persecution or. But there's nothing in there that suggests that he listed in that list of things that perceives that statement. There's nothing about the country. I would agree with that statement. I would like to reserve the remainder of my time for rebuttal. Thank you. Your Honor, I'm Jennifer Parker. I'm from the United States Department of Justice, and I represent the respondent, the attorney general in this matter. As opposing counsel has stated, the government has conceded in this case that the immigration judge's decision did not apply the correct legal standard, particularly with her with regards to some of this court's decisions as far as what's required for an adverse credibility determination. The government's position is that the court should remand the case back to the board to let them apply the correct legal standards, as stated by this court, and redo the credibility. The credibility issue. Do you disagree with the counsel that Hay answers that question and says that the credibility issue is now resolved? I do, Your Honor. In light of yesterday's decision in Lopez, which I did provide a copy to opposing counsel, it just came out while I was on the plane, so it was just handed to me last night at dinner. The Lopez. Where do you eat? I did have a colleague I ate dinner with, and luckily his office had backed him a copy of the decision. But the Lopez decision, it was a question of whether the board had correctly analyzed a well-founded fear claim. The Lopez court found that it did not correctly analyze the well-founded fear, and they remanded to allow the board to perform the correct legal analysis. I'm talking about credibility. Yes, Your Honor. Hay seems to say that you get one crack at credibility. Is that not the way you read Hay? I do read Hay that way, but I would also like to point out that in Lopez, the court specifically says that there is no legal precedent stating that the board shouldn't get a second bite where the legal analysis was wrong, and that under Ventura, Ventura specifically, directly tells the court that they must remand to the agency to perform those types of determinations. Those are very general terms. I'm talking about credibility, and if you and I agree that Hay said you don't get a second shot at credibility, I can't imagine that Lopez would have overruled Hay. Well, Your Honor, we would like to point out that in Hay, the situation was a bit more egregious. In Hay, there was a problem with the IJ denying a translator to the petitioner. Here we don't have any of that. It's very clear the IJ did not believe this petitioner. His reasoning was not explained. Other courts may have accepted his reasoning. The government did not believe that this court would accept his reasoning, which is why we requested a remand to allow him to redo his reasoning in accordance with this court's precedent. Petitioners opposed that remand, and that's why we're here today. But the government would still submit that it should be remanded to the board to allow them to apply the correct legal standard and articulate the adverse credibility determination in a manner that's sufficient. What do we say about Hay? Did Hay get overruled by Lopez? Your Honor, I wouldn't say it's overruled. I would say that in light of Lopez, this court should take another look at the adverse credibility determination in this case in light of the holding in Lopez. Well, I didn't say what do we say about Lopez. I said what do we say about Hay. My reading of Hay would be that the court was rather upset with the immigration judge in that case for not allowing the translator to come in and for expressing he was biased and was harassing the petitioner, and that some of that was the reason for the Hay decision. When Hay said you get one shot at credibility and that's it, you don't get to redo credibility, they only did it because they were upset about the way the government behaved in that case, and they didn't mean it to apply to future cases. It's another Bush v. Gore case. Your Honor, I would just state I don't want to get into the Bush v. Gore analysis. However, I would state that the government would submit that under Lopez, there is rationale for remanding this back to the board to allow them to apply the correct legal standard where it's clear that it's not in Hay, it's not that the immigration judge applied an incorrect legal standard. The court just didn't find that his reasons were substantial enough. Here it's what the government is conceding is that the immigration judge did not apply the correct legal standards. He did not articulate his decision well enough for this court, and we would like to. I wonder if I'm missing something. I mean, couldn't we say under Hay the credibility issue has already been established? We assume the applicant to be credible. Now, the next question is, which the judge didn't appear to reach, is whether there are change to entry conditions. I mean, are these things inconsistent at all? No, Your Honor. We are in the alternative. This court doesn't buy our argument that Lopez would say to remand on the credibility, and the government argues that there was no determination as to whether there was any well-founded fear in this case. There wasn't even determination as to whether the treatment rose to the level of past persecution, whether it actually was on account of he did make that one statement that if what he said was true, it could be an on account of. In fact, there are three separate questions. Judge Shulman asked you about question three. I was asking you about question one, and I was going to say that I had taken enough of your time on credibility, and then you get to well-founded fear, and then the country conditions. And the counsel acknowledged that the well-founded fear, it's a question of whether when the judge listed all those things that occurred, and did not discuss country conditions, and then said if it weren't for credibility, he would have a case. Whether that constitutes a determination on the well-founded fear, that's entirely separate from whether it constitutes a determination on country conditions, which he didn't mention in that particular dialogue. Your Honor, I would not read the judge's statement to say that he had established eligibility. What he said was that would be a foundation for an on account of claim. There was no analysis as to whether. What does that mean, a foundation? He was really saying that the only reason he didn't have a claim was because of credibility, and except for that, he had a claim of the well-founded fear. Your Honor, the government would not agree with that statement. Well, I don't. What the immigration judge was doing was, if you take a look in context at that remark, was he was trying to determine whether the petitioner had it, what he was saying that was on account of. Was it on account of he was a traitor? He was being deemed a traitor because he had disagreed or talked badly about the police. Was it on account of a political opinion, or was it on account of him being part of a group that was being persecuted, a particular social group as traitors to the police? And he did, if read in context, that comment would mean that, yes, if credible, that could establish a basis that would meet the on-account-of standard. However, he did not say that any of that treatment rose to the level of persecution, and even if it had, he did not address whether the petitioner was entitled to a rebuttable presumption of a well-founded fear, whether the government had, in fact, rebutted it, and if he had determined that that treatment had not risen to the level of past persecution, the immigration judge made no determination as to whether the petitioner even had a well-founded fear. So on either analysis, whether it was, he never made an initial determination whether it even rose to the level of persecution to even jump to the second stage. Can I ask you one more question? Yes, Your Honor. I don't want to assume something. Do you agree that this is a three-part determination? We have to make one on credibility, two on well-founded fear, and three on country conditions? I would agree that, yes, the first step is whether he was credible, and that's all the judge reached in this case, and he was not required to go any further with that once he made that determination. But you don't disagree with those categories as being the three things we have to determine, whether it should be remanded as any or all of those three issues? If I understand your question correctly, we'll say, for example, this court says the adverse credibility determination was wrong, and we're finding him credible. At that point, it needs to go back for the board to analyze whether, in fact, this treatment rose to the level of persecution. If it didn't rise to the level of persecution, then you go to the analysis of did he have a well-founded fear. And if we disagreed with that and said, yes, the judge found that there would be persecution, then your next step would be to say, nevertheless, you have to remand on country conditions. Yes, Your Honor, there was absolutely no analysis on that basis. Absent any further questions. I just have an observation. Sometimes the government will stick with a bad position with the tenacity of a terrier with a slipper, and I want to commend you for conceding the part of the case that you did that makes our job easier and is a responsible way to handle the case. Thank you. Thank you, Your Honor. And he's a dog owner. He knows about terriers. Thank you, Your Honor. Absent any further questions, the government rests. Thank you. Thank you. I just wanted to make three very brief points. First, the immigration judge himself introduced the country profile into the record, and that's on page 135 of the administrative record. The second is the claim is that – I'm sorry? What's the effect of that? Well, just previously I stated it was the – I left the impression that it was the government, and I wanted to just clarify that it was the immigration judge who actually made the decision, who had the profile, and introduced it himself, and then recognized the fact that the profile was in the record and did make the statement that he's incorporating all of the written material, testimony, and supporting documents when he was making his decision. The claim here is a claim of past persecution, which would afford the petitioner a presumption of a well-founded fear, and that Lopez is actually an opposite to the credibility finding. Lopez, the credibility was not – there was no credibility determination made by the agency, and therefore this court just assumed the testimony was true. Does Lopez have bearing on whether we should remand the question of the claim of past persecution? Perhaps. I just received the opinion today. My reading of the opinion is Lopez was involved a gentleman who had feared persecution by a guerrilla organization. Here the persecution is feared by the government of Guatemala, and here the persecution actually occurred, was perpetrated by the government of Guatemala. So the issue of country conditions is of a different sort. Well, that wasn't my question about country conditions. The question was whether Lopez – you said Lopez doesn't affect credibility. That's still governed by Hague. The question is whether Lopez is pertinent to the question of whether we should remand the question of past persecution. I'm not able to answer that question at this time. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you both very much. The next case on the calendar is Senator Vicente. I liked that so much I decided to come back.
judges: Reinhardt, Silverman, Clifton